# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| MARILYN ANN FINN, ) | Case No.: 19-71144 |
| ) | Chapter 7 |
| Debtor. ) | |

## MOTION FOR A DETERMINATION OF REASONABLE VALUE OF SERVICES OF DEBTOR'S ATTORNEY AND FOR SANCTIONS

NOW COMES, NANCY J. GARGULA, the United States Trustee for Region 10, by Attorney Mark D. Skaggs, and for her Motion for a Determination of Reasonable Value of Services of Debtor's Attorney and for Sanctions, states as follows:

1. Marilyn Ann Finn ("Ms. Finn" or "Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on August 2, 2019 in the Central District of Illinois, Springfield Division.

2. Attorney for the Debtor, Eric James Homa of UpRight Law, LLC, PO Box 5063, Peoria, IL 61601 ("Attorney Homa"), disclosed on his Disclosure of Compensation of Attorney for Debtor pursuant to Rule 2016(b) that he received an attorney fee of **$1,675.00** from Debtor in this case prior to filing of this case. (*See*, page 45 of 46 of the Bankruptcy Filing, Document Number 1.)

3. The U.S. Trustee believes that the fees in this case are in excess of the reasonable value of services Attorney Homa provided to Ms. Finn. In addition, the U.S. Trustee believes a sanction should be imposed against Attorney Homa for his failure to meet with Ms. Finn and provide proper legal advice to her prior to the commencement of this case in light of the fact that this is the standard practice apparently adopted by Attorney Homa.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and

1334; 11 U.S.C. §§ 105(a) and 329; and Fed. R. Bankr. P. 2016 and 2017.  Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

5.      The United States Trustee is statutorily empowered to monitor the administration of cases commenced under Chapter 7, 11, 12 and 13 of the Bankruptcy Code under 28 U.S.C. § 586(a)(3) and has standing to raise and to appear and be heard in this proceeding under 11 U.S.C. § 307.  The U.S. Trustee has standing to seek the imposition of sanctions as a party in interest pursuant to 11 U.S.C. §§ 105(a) and 707(b)(4)(C) and (D).

## STATEMENT OF FACTS

6.      The allegations of the facts of this case asserted herein were gathered through information received from Trustee Andrew Erickson, the 341 meeting of creditors, and, the pleadings filed in this case.  Following the filing of this Motion, additional discovery may be necessary.  The U.S. Trustee has attempted to conduct the Rule 2004 Examination of the Debtor on three separate occasions, all of which were cancelled for a variety of reasons all attributable to health reasons or concerns of Ms. Finn and/or Attorney Homa.

7.      Debtor's originally scheduled 341 meeting of creditors ("341 Meeting") was set to occur on September 9, 2019.  The 341 Meeting did not occur as originally scheduled as Attorney Homa failed to provide prior to the date of the 341 Meeting records required by the case trustee in order to administer Debtor's case and perform the Trustee's statutorily required duties.  In addition, although Ms. Finn herself appeared at the 341 meeting on September 9, 2019, Attorney Homa did not appear at that meeting such that the meeting was adjourned, in his absence, to September 23, 2019.

8.      After being placed under oath at the adjourned 341 Meeting, Debtor acknowledged selling real estate commonly known as 2005 Turtle Creek Drive, Chatham, IL 62629 ("Former

Residence") prior to commencement of this case. This transfer was not disclosed in her responses to the questions contained on the Statement of Financial Affairs. The transaction selling the Former Residence closed in November 2018 resulting in net proceeds of $13,586.60 to Ms. Finn. Ms. Finn did, however, disclose on her Statement of Financial Affairs that she had resided at the Former Residence within the two years prior to the filing of the bankruptcy case. (*See*, Statement of Financial Affairs Question Number 2.)

9. Ms. Finn also testified at the 341 Meeting that she had sold, prior to filing, more than $100,000 in stocks and other investments. These sales were not disclosed in responses to the various questions on the Statement of Financial Affairs, including under the prior two-year transfer inquiry posed in Question Number 18.

10. Further, Ms. Finn testified that prior to the case filing she transferred her 2005 Cadillac CTS to her son-in-law, for which Debtor received no consideration in exchange, but yet was still disclosed on her Schedule A/B as being owned by her. This transfer was also not disclosed in her schedules or in her responses to the various questions on the Statement of Financial Affairs.

11. Debtor stated under oath at the 341 Meeting that she reviewed the bankruptcy filing prior to her actually signing the papers on July 27, 2019. This review would have been conducted by Debtor receiving the completed schedules through electronic means and reviewing them outside the presence of Attorney Homa, signing the documents and then sending them back to Attorney Homa.

12. During or immediately after the conclusion of the 341 Meeting, Attorney Homa represented that he did not meet in a face-to-face setting with Ms. Finn prior to the commencement of the case and that Central District of Illinois Bankruptcy Judge Mary Gorman does not require debtor counsel to meet in a face-to-face meeting prior to the filing of the case. Attorney Homa

did not personally meet Ms. Finn until the adjourned 341 Meeting held on September 23, 2019. That was the first time that Ms. Finn was able to receive face-to-face legal advice and representation by her attorneys.

13. The information contained in the voluntary petition, the schedules and the statement of financial affairs, and all of the other required documents, was all obtained via electronic means of email or other electronic transmission of documents to be completed in rough form by Ms. Finn and then electronically transmitted back to Attorney Homa.

14. In fact, the manner in which Ms. Finn's schedules and Statement of Financial Affairs was completed, at least in part, was through a questionnaire provided through the BestCase Bankruptcy preparation software utilized by Attorney Homa. The questionnaire utilized by Attorney Homa in this particular case is attached hereto as Exhibit 1. Exhibit 1 was provided to the U.S. Trustee by Attorney Homa pursuant to the document request associated with the U.S. Trustee's efforts to conduct the Rule 2004 Examination of the Debtor.

15. Upon information and belief, the process for completing the process is as follows: Attorney Homa transmits the blank questionnaire to the debtor. The debtor then receives an email with the questionnaire attached thereto. Upon opening the attached questionnaire, the debtor must agree to certain provisions, including those provisions spelled out in single space type on pages 1 and 2. Debtor then proceeds through the questionnaire typing in her responses to the questions. Upon completion of the questionnaire as determined by the debtor, debtor then pushes a button transmitting the completed questionnaire back to her attorney. The attorney may then purchase the completed questionnaire and import or otherwise populate the voluntary petition, the schedules, the statement of financial affairs and other required documents with the information from the questionnaire to complete, at least in part, the bankruptcy schedules and statement of financial affairs.

16. In this particular case, Exhibit 1 reflects that Ms. Finn opened her questionnaire sent by Attorney Homa on June 20, 2019 at 4:53 p.m. She then checked the box acknowledging and agreeing to the terms spelled out in the single space lines at 4:56 p.m. on that same day, or, in other words, she agreed to the terms thereof a mere 3 minutes after opening the document she had not previously seen. Ms. Finn then reviewed the questionnaire and typed in her responses to the questionnaire ultimately completing that task 24 minutes later at 5:20 p.m. The questionnaire was then transmitted to Attorney Homa who then purchased the completed questionnaire at 5:21 p.m. A review of the information contained in Exhibit 1 reflects that some of the exact same language was included in the schedules filed with the Court. For example, the information about Debtor's car, her household goods and furnishings, cash on hand and other items.

17. The completed questionnaire does in fact include the disclosure by Ms. Finn of her former address at the location of the Real Estate.

18. It is the undersigned's understanding based upon discussions with Attorney Homa and through representations made by Attorney Homa to the Court that it is Attorney Homa's standard practice to not meet in a face-to-face setting with debtors prior to the commencement of the case. In this particular case, Attorney Homa neither met with Ms. Finn in a traditional face-to-face setting nor through a video conference medium of some sort prior to the commencement of the case. The consultations between Attorney Homa and his clients, including Ms. Finn, occur during phone calls or through email communications.

### REQUEST FOR RELIEF

19. Pursuant to 11 U.S.C. § 329 and Rules 2016 and 2017, the United States Trustee respectfully requests this Court to i) examine the transactions between the Debtor and Attorney Homa, and enter an order cancelling the Retainer Agreement, and require disgorgement of the attorney's fees paid to Attorney Homa to the extent the Court determines such fees are not

reasonable; and ii) pursuant to 11 U.S.C. §§ 105(a), and 707, impose civil penalties and/or sanctions against Attorney Homa, including disgorgement in full of the Debtor's attorney's fees, and a civil penalty or sanction in such amount as the Court determines is needed to deter future violations of the Bankruptcy Code.

## **LEGAL ANALYSIS**

20. Section 329 of the Bankruptcy Code allows the Bankruptcy Court to examine compensation arrangements between debtors and their attorneys. Pursuant to Section 329(b), this Court can examine the amount paid to counsel and, to the extent the amounts paid exceed the reasonable value of the services rendered, this Court can cancel any agreement between Debtor and counsel and order the return of any excessive payment. (*See*, 11 U.S.C. §329(b).) Federal Rule of Bankruptcy Procedure 2017(a) provides:

> On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

Fed. R. Bankr. P. 2017(a).

21. The United States Bankruptcy Code also requires a debtor's attorney to perform a reasonable investigation into the circumstances that give rise to the petition. Specifically, Section 707(b)(4)(C) and (D), provide in relevant part, as follows:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
> (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
> (ii) determined that the petition, pleading, or written motion—
> (I) is well grounded in fact;
> …
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

**ARGUMENT**

**The Court should Examine Attorney Homa's Transactions
With the Debtor and Require Disgorgement of Fees**

22. The Court has broad discretion under § 329(b) and to disallow and require disgorgement of attorney compensation found to be excessive. *In re Geraci*, 138 F.3d 314, 320 (7th Cir. 1998) ("[T]he bankruptcy court is authorized to act whenever it determines that the compensation the debtor has paid or agreed to pay his counsel exceeds the reasonable value of the services provided. No further finding is required."). Once a question has been raised about the reasonableness of the attorney's fee under § 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable. *Id.,* 138 F.3d at 318.

23. Section 329 and Rule 2017 authorize a court to conduct a holistic review of an attorney's transactions with his debtor client, and to deem the attorney's compensation excessive for many reasons, including for the attorney's failure to perform the agreed upon services required for the debtor's bankruptcy case. *In re Martin,* 197 B.R. 120, 126 (D.Colo. 1996). Indeed, "[w]hen an attorney ineptly or incompetently renders services on behalf of debtors, the court may order disgorgement of all fees pursuant to § 329." *In re Lee,* 495 B.R. 107, 113 (Bankr. D. Mass. 2013).

24. Here, Attorney Homa agreed he would represent Debtor in addressing her financial affairs relating to the filing of a chapter 7 bankruptcy case. That includes an analysis of Debtor's financial situation, rendering advice in determining whether to file a petition in bankruptcy, the timing of the filing of the petition in bankruptcy, the accurate preparation and filing of any petition, schedules, and statement of financial affairs.

25.     However, as set forth above, Attorney Homa failed to provide the minimum services to the Debtor that would support the fees charged and, consequently, Debtor has faced the possibility of complications relating to the discharge of her debts which would not otherwise have been encountered had Attorney Homa reasonably performed his duties.  Thus, examination of Attorney Homa's transactions with the Debtor and disgorgement of his fees is warranted.

### The Court Should Apply Section 707 to Impose Appropriate Civil Penalties and to Void the Debtor's Engagement With Attorney Homa

26.     Attorney Homa's representation of the Debtor also warrants the Court's application of civil penalties under section 707.  Specifically, Attorney Homa failed to conduct a reasonable investigation into the Debtor's financial affairs as required by section 707, and he failed to exercise the reasonable care to ensure that the Debtor's Schedules and SOFA did not contain omissions and were not untrue and misleading.

27.     Implicit in an attorney's obligation to represent a chapter 7 debtor is that an attorney will act as an attorney in making proper inquiry that might lead to relevant information.  (*See, In re Moffett,* 2012 WL 693362, *3 (Bankr. C. D. Ill. March 2, 2012).)  Indeed, an attorney has an independent duty to investigate and verify the contents of the Debtors' schedules and SOFA.  *U.S. Trustee vs. Breset,* 246 B.R. 784 (Bank. M.D. Penn. 2000).  The attorney's obligation is not completed simply by relying upon the client's duty to provide accurate information. *Id.*  Rather, an attorney must investigate and ask questions based upon information that is provided that may lead to additional relevant information.  (*See, In re Casavalencia,* 389 B.R. 292, 296 (Bankr. S.D. Fla. 2008) (imposing sanctions under Rule 9011 and 11 U.S.C. §§ 105(a) and 526(a)(2) on attorney because the falsehoods contained in his client's filed petition and schedules would have been known to attorney "upon the exercise of reasonable care.").)

28. By submitting schedules and statements with the Debtor's petition bearing the Debtor's electronic signature which failed to disclose the aforementioned transfers, Attorney Homa violated Section 707(b)(4)(C) of the Bankruptcy Code. Upon the exercise of a reasonable investigation, by taking affirmative steps to ask the Debtor the kinds of minimally necessary questions or to thoroughly review Debtor's tax returns, Attorney Homa should have and most likely would have discovered that Debtor had actually owned the Former Residence. Had Attorney Homa even glanced at the 2017 and 2018 tax returns, he would have discovered deductions associated solely with ownership of real estate and not merely as a tenant in a residence owned by another. An attorney's job is not merely to act as a mail person receiving information and then passing it on without it being analyzed and used accordingly.

29. Had Attorney Homa not already discovered the sale of the Former Residence through a conversation with the Debtor, then he should have discovered this information after an *actual* review of the 2017 and 2018 federal and state income tax returns. Attorney Homa could not have fully investigated the Debtor's financial affairs and still made the error of failing to properly disclose the transfer of the Former Residence. (*See*, *In re Swisher*, 17-70310, 2017 WL 5634594, footnote 1, C.D. Illinois, November 22, 2017, (Gorman, J.) ("But the disclosures [on Schedule A/B] … were clearly wrong and seemingly conflicted with the information provided elsewhere about how much money the Debtor had, either in cash or in her savings account. The attorney could not have fully investigated the Debtor's affairs as required and still made such errors. 11 U.S.C. § 707(b)(4)(C).").)

30. This Court has the power to impose sanctions under Sections 105(a), 707 of the Bankruptcy Code and under the Court's own inherent powers. Specifically, under Section 105(a), this Court retains the inherent authority to "control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991); *Walton v.*

*LaBarge (In re Clark),* 223 F.3d 859, 854 (8th Cir. 2000). Finally, under Section 707(b)(4), this Court may impose an appropriate sanction against Debtor's counsel. *See,* 11 U.S.C. § 707(b)(4); *In re Triepke*, No. 09-21855, 2012 WL 1229524 *10 (Bankr. W.D. Mo. April 12, 2012) (Dow, J.); *Lafayette v. Collins (In re Withrow),* 405 B.R. 505, 512 (1st Cir. B.A.P. 2009) (affirming bankruptcy court's imposition of sanctions where attorney failed to conduct a reasonable investigation into the underlying facts before filing the Debtor's schedules and statement of financial affairs).

31. As a direct result of Attorney Homa's failure to meet his minimum duty to investigate and to take reasonable care in the preparation of Debtor's Schedules, Debtor was subjected to additional scrutiny she would not have had to undergo had Attorney Homa simply met with the Debtor in a face-to-face setting and then represented Debtor as a reasonable attorney would have and not acted merely as a paper handler.

32. In order to insure that Attorney Homa changes his standard practice of not meeting with clients in a face-to-face setting prior to the commencement of the case, Attorney Homa should be required to file an affidavit in each and every case that he appears as counsel for the Debtor affirming that he has met with the debtor in a face-to-face setting prior to the filing, the specific dates he met with the debtor, the amount of time he spent meeting with the debtor, and, without waiving applicable privileges, the nature of the discussions or the tasks performed.

33. Based on the foregoing, this Court should examine the fees paid to Attorney Homa, order the disgorgement of any excess compensation, and, impose appropriate sanctions against Attorney Homa.

**WHEREFORE**, the United States Trustee respectfully requests that the Court:

A. Examine pursuant to 11 U.S.C. §329(b) the compensation arrangement and fees paid to Attorney Homa;

B.  Order Attorney Homa to turnover to the estate, or the Debtor, any excess compensation of not less than $1,100.00;

C.  Cancel any agreement for compensation which exists between Debtor and Attorney Homa;

D.  Impose an appropriate sanction against Attorney Homa in an amount of not less than $5,000;

E.  Require Attorney Homa to attend not less than 30 hours of bankruptcy specific continuing legal education over the course of the next 12 months with an additional 6 hours of ethics specific continuing legal education;

F.  Require Attorney Homa to file an affidavit in each and every case in which he appears as attorney for the debtor setting forth (i) that he met with the debtor in a face-to-face meeting prior to the commencement of the case; (ii) dates on which he met with the debtor in a face-to-face meeting; (iii) the amount of time spent with the debtor during each face-to-face meeting; (iv) the nature of the discussions or the tasks performed during each face-to-face meeting; and,

F.  Grant such other and further relief as this Court may deem just and equitable.

Dated: March 2, 2020

Respectfully submitted,

NANCY J. GARGULA,
United States Trustee

*/s/ Mark D. Skaggs*

By: Mark D. Skaggs
Trial Attorney

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing **MOTION FOR A DETERMINATION OF REASONABLE VALUE OF SERVICES OF DEBTOR'S ATTORNEY** was served electronically through CM/ECF:

- Andrew S. Erickson     aetrustee@aericksonlaw.com, IL97@ecfcbis.com

- Eric James Homa     lawejhacl@yahoo.com, notices@UpRightLaw.com;lawejh@yahoo.com;lawejhjw@yahoo.com

and upon the following persons by enclosing same in an envelope addressed to such persons at the addresses indicated:

>Marilyn Ann Finn
>2621 S Spring St
>Springfield, IL 62704

with postage fully prepaid and deposited in the United States Postal Office mailbox in Peoria, Illinois, on March 2, 2020.

>*/s/ Mark D. Skaggs*
>Mark D. Skaggs

Mark D. Skaggs, ARDC No.: 6210087
United States Department of Justice
Office of the United States Trustee
401 Main Street, Suite 1100
Peoria, Illinois   61602
Phone:   (309) 671-7854, ext. 226
Fax: (309) 671-7857
E-mail: Mark.D.Skaggs@usdoj.gov