**SIGNED THIS: August 28, 2020**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 19-71144 |
| MARILYN ANN FINN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ ) | | |
| | ) | |
| In Re | ) | |
| | ) | Case No. 19-71778 |
| GALE RAY CUSTER and JOYCE | ) | |
| ANNETTE CUSTER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

# O P I N I O N

Before the Court are two Motions for Determination of Reasonable Value of

Services of Debtor's Attorney and for Sanctions ("Motions for Sanctions"). Both

Motions for Sanctions complain about the quality of work performed by Eric

Homa, the attorney for the Debtors in each of the above cases. For the reasons set

forth herein, both Motions for Sanctions will be granted, in part.

## I. Factual and Procedural Background

Because the same legal issues were raised in each of these cases, they have been consolidated for the purposes of this Opinion. The factual basis for the relief sought in each case is slightly different, however, and the facts of each case will therefore be set forth separately.

### A. Marilyn Ann Finn

Marilyn Ann Finn filed her voluntary petition under Chapter 7 on August 2, 2019. She was represented in the filing by Attorney Eric Homa, who disclosed an affiliation with UpRight Law, LLC ("UpRight Law") with his appearance. On her Statement of Financial Affairs ("SOFA"), at question 16, Ms. Finn disclosed that, on May 22, 2019, she paid Attorney Homa $1675 in attorney fees and $335 for the filing fee.

Andrew Erickson was appointed as the Chapter 7 trustee ("Trustee") in Ms. Finn's case, and her initial meeting with creditors was scheduled for September 9, 2019. According to a motion filed later by the Trustee seeking to compel Ms. Finn to participate in a Rule 2004 examination, the initial creditors meeting was continued because neither Mr. Homa nor Ms. Finn had provided the Trustee with required documents before the meeting, and Mr. Homa failed to appear for the meeting. At a continued meeting, Ms. Finn testified about previously undisclosed sales of real estate and investments, as well as the transfer of a vehicle to a family member. The Trustee requested a Rule 2004 examination to inquire of Ms. Finn

about the transactions and to compel her to provide required bank statements and other documents. The Trustee also filed a motion seeking an extension of time to object to Ms. Finn's discharge based on his concerns about the undisclosed sales and transfers and her failure to provide documents. Orders were subsequently entered requiring Ms. Finn to attend a Rule 2004 examination and extending the deadline for the Trustee to object to her discharge.

The United State Trustee ("UST") also filed a motion seeking to compel Ms. Finn to attend a Rule 2004 examination. The UST expressed concerns about the undisclosed sales and transfers but also stated an intent to inquire about Ms. Finn's contacts with Attorney Homa. The UST alleged that Attorney Homa did not meet with Ms. Finn before filing her bankruptcy and did not fully investigate her financial affairs before the filing. The UST's motion was also granted.

In November 2019, Ms. Finn filed an amended SOFA and several amended schedules providing information about the sales and transfers that the Trustee had discovered. It appears from the record and other subsequently-filed documents that Ms. Finn never appeared for a Rule 2004 examination by the Trustee or UST. She did, however, receive her discharge on January 8, 2020. On March 2, 2020, the UST filed the Motion for Sanctions. The Motion for Sanctions will be discussed in more detail below.

### B. Gale Ray Custer and Joyce Annette Custer

Gale Ray Custer and Joyce Annette Custer filed their voluntary petition under Chapter 7 on December 5, 2019. They were represented by Attorney Eric Homa, who disclosed an affiliation with UpRight Law with his appearance. On

their SOFA, the Custers disclosed that they had paid Attorney Homa $1775 in attorney fees and $335 for the filing fee; the payments were made in installments beginning in September 2018 and ending in October 2019.

Andrew Erickson was also appointed Trustee in the Custers' case, and their first meeting of creditors was set for January 6, 2020. According to motions filed by the UST seeking to compel the appearances of both Mr. and Mrs. Custer, as well as Attorney Homa, at Rule 2004 examinations, Mr. Homa did not attend the Custers' creditors meeting due to illness but sent a substitute attorney instead. During that meeting, the Custers disclosed to the Trustee that Mr. Custer was trustee of a trust for his grandchildren, that Mr. Custer operated a business selling items on Ebay, that the Custers had a Christmas Club bank account, that the Custers had transferred a vehicle to a grandson and made other payments for the benefit of the grandson, and that the Custers had been paying a law firm $750 per month to help them reduce the interest rate on their home mortgage loan. None of this information had been disclosed on the Custers' SOFA or schedules. The Custers also reported that they had not met with Attorney Homa prior to the filing of their case.

On their schedules, the Custers listed ownership of what they described as a single-family home where they resided; they valued the home at $68,000 and said it was subject to a $99,000 lien. Shortly after the case was filed, a motion seeking relief from stay was filed by 21st Mortgage Corporation ("21st Mortgage") asserting a lien on a mobile home in an amount in excess of $100,000. The creditor claimed that, as of the date of filing, the Custers had missed five monthly payments of $1264 each and that it was entitled to relief from stay to obtain

possession of the mobile home.

Following the Court's standard procedures, notice of the motion for stay relief, including a deadline for filing objections to the motion, was sent to the Debtors and their attorney. The Debtors responded themselves, without assistance from Attorney Homa. They wrote to the Court saying that they wanted to keep their home, that they had hired lawyers to help them reduce the interest rate on their loan, and that, because of their ages and health issues, it would be difficult for them to move. The motion for relief from stay was then set for hearing. Prior to the motion being heard, Attorney Homa filed a motion to convert the case to Chapter 13.

The Custers appeared with Attorney Homa at a hearing on January 28, 2020. Attorney Homa said that he told the Custers that the only way to save their home was to convert to a Chapter 13 but that he had also advised them that the Trustee might object to the conversion because of the undisclosed assets and the amount of time that had elapsed after the case filing. He said that he had no idea that the Custers had hired and paid another law firm to look into refinancing their mortgage; he apparently learned the information when he attended a continued meeting with the Trustee. As the Court discussed the fact that a Chapter 13 plan might require the Custers to make significant payments, Mrs. Custer shook her head, strongly indicating that they would not be able to make such payments. Attorney Homa did not address the Custers' ability to fund a Chapter 13 plan and seemed oblivious to Mrs. Custer's strong reaction to his comments to the Court.

At the hearing, the Trustee stated that he intended to object to the motion to convert due to the significant number of undisclosed assets and transfers. The

Court also expressed concern about the many errors in the Custers' schedules
and SOFA and asked Attorney Homa whether he had actually met with the
Custers before filing the case. He admitted that he had not but then claimed that
this Court had previously said that attorneys did not need to meet with their
clients before filing cases.[1] The Court reacted strongly by saying that it was
absolutely not the Court's position that attorneys did not have to meet with their
bankruptcy clients. To the contrary, the Court had previously sanctioned
attorneys for not meeting with their clients and had issued a written opinion on
the issue.[2] The Court stated that it had no ability to relieve attorneys of their

---

[1] Attorney Homa later provided a reference to the case of Amy Ann Jordan and
William E. Jordan (#13-70654) and specifically to a hearing held on November 12, 2013,
as support for his assertion that this Court had relieved debtors' attorneys of their
obligation to meet with their clients. The Court uses the Courtspeak recording program
that allows the posting of the audio of all hearings as PDFs on the docket. A review of the
hearing audio confirmed that this Court never said anything at the hearing in the Jordan
case that even remotely could have been construed as supporting Attorney Homa's
assertions. The hearing involved a motion for sanctions filed by the UST because the
attorneys in the Jordan case had held the debtors' petition, schedules, and other
documents for four months after the documents were signed and then filed the
documents without updating time-sensitive information. The attorneys also allowed their
software to date the documents on the date of the actual filing, thereby representing that
the debtors had signed the documents that day rather than months before. At no point
in the Jordan hearing was there any discussion about an attorney's responsibilities in
gathering information in the first place; nor was there any indication whatsoever that this
Court approved of any cutting of corners in the process. To the contrary, the attorneys
involved in the Jordan case were sanctioned for their failure to update the documents
before filing. At a hearing in this case on February 25, 2020, after the Court advised
Attorney Homa that the audio of the Jordan hearing did not support him, he admitted as
much and apologized for misrepresenting the Court's position.

[2] In *In re Moffett*, 2012 WL 693362, at *1 (Bankr. C.D. Ill. Mar. 2, 2012), this Court
sanctioned an attorney who failed to meet with his client prior to filing a Chapter 7 case.
The Court dismissed the attorney's argument that the client could have met with him if
she had requested to do so, finding that the attorney was not relieved of his professional
obligations because a debtor did not know enough to ask the right questions or request
a meeting. *Id.* at *4.

ethical responsibilities to thoroughly investigate their clients' situations in order to provide competent representation. And, although Attorney Homa argued that he could do an adequate interview by running through questions on the phone, the Court pointed out that the unfortunate result of his not meeting and conducting a complete interview with the Custers was obvious. The matters were continued for further hearing to give the Trustee time to object to the conversion and to give the Custers time to consider whether conversion was a viable and beneficial option for them to pursue.

Prior to the continued hearing, the Custers, through Attorney Homa, withdrew their motion to convert and their objection to 21st Mortgage's motion for stay relief. Stay relief was granted to 21st Mortgage. In the meantime, the Custers amended their schedules and SOFA to add information previously omitted. And, even though it appears that they never attended a 2004 examination, they received their discharge on March 11, 2020. The Motion for Sanctions that will be discussed in detail below, was filed on March 2, 2020.

## C. The Motions for Sanctions and Responses

The UST's Motions for Sanctions recite the facts of each case and seek sanctions against Attorney Homa. In large measure, the requests for sanctions are based on Attorney Homa's failure to meet personally with either Ms. Finn or the Custers and his failure to otherwise collect and review all required information before filing the bankruptcy cases. In each case, the UST says that Attorney Homa failed to provide personal and meaningful representation to his clients. Attorney Homa is said to have admitted in both cases that it was his standard practice to

not meet with clients before filing their cases, and, in at least the Custers' case, Attorney Homa asserted that this Court had condoned the practice.

Both Motions for Sanctions seek a review of Attorney Homa's fees and the disgorgement of those fees to the extent they are found to be unreasonable. Further, both Motions for Sanctions request that other sanctions be imposed, including civil penalties, continuing education requirements, and the filing of an affidavit with each future case filed certifying that Attorney Homa has actually met with his clients. The UST included in the Motions for Sanctions legal authority for the imposition of all requested sanctions.

Attorney David M. Menditto of UpRight Law entered his appearance for Attorney Homa and filed a Response to the Motion for Sanctions in the Finn case and a Response and a Corrected Response to the Motion for Sanctions in the Custer case.[3] The Responses acknowledge that Attorney Homa made some errors in each case but contend that the errors have been corrected and that, in any event, the errors were harmless. They admit that some errors were caused by Attorney Homa's failure to include information that either Ms. Finn or the Custers had provided to him in their bankruptcy filings. Other errors, Attorney Menditto says, occurred because Attorney Homa did not know about the information that was omitted from the schedules or SOFAs in each case. With respect to that information, however, Attorney Menditto does not say that Attorney Homa ever asked his clients about the matters.

Contrary to Attorney Homa's in-court statements to this Court in the Custer

---

[3] Attorney Menditto actually identified his firm affiliation as Deighan Law LLC but says that the firm does business as UpRight Law in the State of Illinois. For consistency purposes, the firm will be referred to as UpRight Law.

case, Attorney Menditto says that Attorney Homa does not have a practice of not meeting with his clients. To the contrary, he claims that clients are given the option, and it is the clients, rather than Attorney Homa, who make the decision about whether to meet in person. Apparently, clients who live at a distance or have health issues may choose to not meet personally and instead handle their interactions with Attorney Homa by phone or email. The Responses imply but do not specifically state that either Ms. Finn or the Custers were given the option to meet with Mr. Homa and specifically declined to do so.

With both the Finn Response and the Custer Corrected Response, Attorney Menditto provided proof that the full amount of attorney fees and costs paid in each case had been voluntarily disgorged to the Trustee. He claims that this voluntary action on the part of UpRight Law renders the UST's request for this Court to review Attorney Homa's transactions with his clients moot. He also says that, because the errors admittedly made by Attorney Homa were minor and harmless, no other sanctions are justified. Further, he argues that, because the UST did not give proper notice that she intended to seek sanctions and did not give Attorney Homa the opportunity to withdraw the offending documents as is required by Rule 9011, no sanctions may be imposed. Fed. R. Bankr. P. 9011(c). The Responses also assert that, because the UST relies, in part, on §707(b)(4)(C) as the authority for requested sanctions, and because §707(b)(4) refers to Rule 9011, the so-called safe-harbor provisions of Rule 9011 apply and, absent proper notice, no sanctions may issue under §707(b)(4)(C). 11 U.S.C. §707(b)(4)(C). Finally, Attorney Menditto argues that the Court's inherent authority to impose sanctions is narrow and limited and that the UST should have brought an

adversary complaint rather than a motion seeking the imposition of sanctions.

Arguments were held telephonically on the Motions for Sanctions on May 19, 2020. The UST's attorney argued that sanctioning Attorney Homa was appropriate because his conduct in admittedly failing to meet with his clients violated his professional obligations. He noted that Attorney Homa had not only failed to meet with his clients but had also failed to review the documents provided by the clients and had not correctly included the information he did collect on the schedules and SOFAs filed in each case. He acknowledged that meeting with clients by video conference was acceptable based on the current pandemic challenges but questioned whether communicating only by phone and email was sufficient to meet professional requirements. He noted that, at least in the Finn and Custer cases, Attorney Homa had not established that he was capable of doing a thorough and complete job of representing clients by the use of only phone and email contacts. He asserted that the errors made by Attorney Homa were not harmless and that this Court has full authority to issue the sanctions requested.

The Trustee also participated in the hearing in support of the UST's Motions for Sanctions. He said that even a cursory review of the required financial information in each case would have put Attorney Homa on notice of errors in the documents he filed. The Trustee pointed out that he and other trustees need to rely on the attorneys who handle debtor cases to be honest and thorough. Information needs to be true, and it is troubling when cases are filed where no effort has been made to ensure the accuracy of the information provided. He said that he had opened estates in each case and, with respect to the Custers, was pursuing several small assets that he might otherwise have abandoned but for the

fact that he had the disgorged fees to administer.[4]

Attorney Menditto appeared for Attorney Homa. He asserted that the errors in the cases were harmless because they were fixable. Nevertheless, he assured the Court that both he and Attorney Homa took the matters before the Court seriously. He said, as he had previously claimed in his written submissions, that Attorney Homa had filed over 2000 bankruptcy cases without ever being disciplined or sanctioned. When the Court questioned that assertion, saying that Attorney Homa may not have been sanctioned but that he had been admonished about timeliness and the quality of his work by both the Court and the trustees in a number of cases, Attorney Menditto acknowledged that Attorney Homa admittedly had failed to appear for scheduled matters in the past. But he maintained that those cases were not at issue now and that the absence of any prior formal sanction or discipline should be considered.

Attorney Menditto argued that the sanctions sought are in the nature of injunctive relief, and the UST should therefore have filed an adversary complaint against Attorney Homa. He argued that the UST also should have given the safe-harbor notice to Attorney Homa before seeking sanctions and that, in any event, this Court's inherent authority to sanction is limited.

The matter was fully briefed at the time of argument and is ready for decision.

---

[4] The Trustee has since compromised with the Custers for the sum of $1500 related to transfers made for the benefit of their grandson. He has also obtained an order requiring the Custers to turn over $1248.36 in non-exempt funds held by them in a bank account on the date of filing. The Custers have agreed to make monthly payments of $250 to satisfy this obligation.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The decision on whether to sanction Attorney Homa under the circumstances presented relates to the administration of the case and is a core proceeding. 28 U.S.C. §157(b)(2)(A). The issues before the Court arise in the bankruptcies and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

### A. Standards of Professional Conduct

The District Court of the Central District of Illinois has adopted the Rules of Professional Conduct as promulgated by the Illinois Supreme Court to govern practice in all federal courts within the District. CDIL-LR 83.6(D). Under those rules, a lawyer is required to provide competent representation to clients, and competent representation is defined as requiring the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Ill. R. Prof'l Conduct (2010) R. 1.1 (eff. Jan. 1, 2010). Lawyers are also prohibited from charging or collecting unreasonable fees. Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010). Lawyers may not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal[.]" Ill. R. Prof'l Conduct (2010) R. 3.3(a)(1) (eff.

Jan. 1, 2010).

In bankruptcy courts, the required professional standards also include the

mandates of §707(b)(4) of the Code, which provides, in part:

> (C) The signature of an attorney on a petition, pleading,
> or written motion shall constitute a certification that the
> attorney has—
>
>> (i) performed a reasonable investigation into the
>> circumstances that gave rise to the petition,
>> pleading, or written motion; and
>>
>> (ii) determined that the petition, pleading, or
>> written motion—
>>
>>> (I) is well grounded in fact; and
>>>
>>> (II) is warranted by existing law or a good
>>> faith argument for the extension,
>>> modification, or reversal of existing law and
>>> does not constitute an abuse under
>>> paragraph (1).
>
> (D) The signature of an attorney on the petition shall
> constitute a certification that the attorney has no
> knowledge after an inquiry that the information in the
> schedules filed with such petition is incorrect.

11 U.S.C. §707(b)(4)(C), (D).

Also pertinent to the discussion of professional standards is Federal Rule

of Bankruptcy Procedure 9011, which provides, in part:

> (b) Representations to the Court. By presenting to the
> court (whether by signing, filing, submitting, or later
> advocating) a petition, pleading, written motion, or other
> paper, an attorney or unrepresented party is certifying
> that to the best of the person's knowledge, information,
> and belief, formed after an inquiry reasonable under the
> circumstances, —
>
>        . . .

> (2) the claims, defenses, and other legal
> contentions therein are warranted by existing law
> or by a nonfrivolous argument for the extension,
> modification, or reversal of existing law or the
> establishment of new law;

> (3) the allegations and other factual contentions
> have evidentiary support or, if specifically so
> identified, are likely to have evidentiary support
> after a reasonable opportunity for further
> investigation or discovery[.]

Fed. R. Bankr. P. 9011(b)(2), (3).

Not mentioned by the parties but also relevant to the inquiry here are the provisions of the Code related to debt relief agencies. Attorneys for debtors are debt relief agencies. *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 235-36 (2010). As such, debtors' attorneys are subject to the provisions of §526(a) that provide, in part:

> (a) A debt relief agency shall not—

> . . .

> (2) make any statement, or counsel or advise any
> assisted person or prospective assisted person to
> make a statement in a document filed in a case or
> proceeding under this title, that is untrue or
> misleading, or that upon the exercise of
> reasonable care, should have been known by such
> agency to be untrue or misleading; [or]

> (3) misrepresent to any assisted person or
> prospective assisted person, directly or indirectly,
> affirmatively or by material omission, with respect
> to—

> > (A) the services that such agency will
> > provide to such person; or

-14-

(B) the benefits and risks that may result if such person becomes a debtor in a case under this title[.]

11 U.S.C. §526(a)(2), (3).

Section 526 provides its own remedies for violations. If a debtor's attorney violates the restrictions on debt relief agencies, whether intentionally or negligently, the attorney may be required to disgorge fees and reimburse the debtor-client for actual damages and attorney fees. 11 U.S.C. §526(c)(1), (2)(A). Civil penalties and injunctive relief are also available. 11 U.S.C. §526(c)(5).

Taken together, the above provisions require an attorney representing a debtor in bankruptcy to thoroughly interview the client, to require the client to produce relevant information, to review the client's financial documents and other information provided, and to resolve any inconsistencies or questions before filing the case. *In re Tatro*, 2020 WL 534715, at *5-6 (Bankr. C.D. Ill. Jan. 31, 2020). The attorney must "make a reasonable inquiry as to the circumstances giving rise to the bankruptcy petition and all facts asserted therein." *In re Beinhauer*, 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017). The attorney must inform debtor clients of the information required to be provided because the "attorney is the expert and cannot rely upon a client's limited understanding of what constitutes 'complete' or 'necessary' information[.]" *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 211 (Bankr. D. Nev. 2013). The attorney's obligation is not lessened if a debtor does not request a personal meeting or ask detailed questions about the bankruptcy process. *Moffett*, 2012 WL 693362, at *4.

Attorney Homa and Attorney Menditto do not dispute that the above standards apply to Attorney Homa. Rather, they dispute the Court's ability to

enforce the standards. They raise several substantive and procedural arguments for their apparent proposition that, even if Attorney Homa's conduct fell short of required standards, there is little this Court can do about it. Their arguments lack persuasion but still must be addressed.

Bankruptcy courts have broad authority and inherent power to impose sanctions on parties and attorneys for case-related wrongdoing. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000). The authority derives from §105 of the Code that provides, in part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Under §105, bankruptcy courts have "broad powers . . . to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." *In re Volpert,* 110 F.3d 494, 500 (7th Cir. 1997). Although a "sanctioning court should ordinarily rely on available authority conferred by statutes and procedural rules," it may use its inherent powers when such statutes and rules are inadequate "to serve the court's purposes." *Rimsat*, 212 F.3d at 1048-49 (citations omitted).

Attorney Homa suggests that the Court's inherent authority is limited and must only be exercised "with restraint and discretion." The Court does not disagree; "restraint and discretion" are always called for when a court is rendering a decision, whether it be on a sanctions issue or any other substantive or procedural issue. And the Court is fully aware that §105 must be used "within the confines of the Bankruptcy Code" and not to circumvent express provisions of the Code. *Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005) (citing *In re Lloyd*, 37 F.3d 271, 275 (7th Cir. 1994)). There is no doubt but that "the power conferred by §105(a) is one to implement rather than to override.*" In re Kmart Corp.*, 359

-16-

F.3d 866, 871 (7th Cir. 2004) (citations omitted). But requiring "restraint and discretion" and fidelity to the Code in using §105 as a basis for sanctions does not unduly limit this Court's authority to issue sanctions when it finds violations of the Illinois Rules of Professional Conduct and the Bankruptcy Code and Rules. This Court has full power and authority to address Attorney Homa's conduct; his argument that §105 is so limited that this Court cannot act is simply incorrect.

Attorney Homa and Attorney Menditto make more nuanced arguments related to the enforcement of the provisions of §707(b)(4) and Rule 9011. 11 U.S.C. §707(b)(4); Fed. R. Bankr. P. 9011. The UST relies on §707(b)(4) in seeking to have civil penalties and other sanctions imposed on Attorney Homa. Attorney Homa says that, because §707(b)(4) refers to Rule 9011 and Rule 9011 contains a safe-harbor provision requiring notice and an opportunity to withdraw an offending pleading before sanctions can be imposed, sanctions cannot be imposed under §707(b)(4) absent compliance with the safe-harbor provisions.

Rule 9011 provides that, to obtain sanctions for a violation of its mandates, an aggrieved party must first serve a copy of any proposed motion for sanctions on the offending party, providing not less than 21 days to withdraw or appropriately correct "the challenged paper, claim, defense, contention, allegation, or denial[.]" Fed. R. Bankr. P. 9011(c)(1)(A). These safe-harbor provisions do not apply, however, when it is the filing of the petition that violates the rule. *Id.* Likewise, the safe-harbor provisions do not apply when a court initiates the inquiry as to whether conduct is sanctionable by issuing an order to show cause *sua sponte*. Fed. R. Bankr. P. 9011(c)(1)(B). Here, the UST admittedly sent no safe-harbor notice to Attorney Homa before filing the Motions for Sanctions, but the

UST also does not rely on Rule 9011 in seeking sanctions.

Attorney Homa says that, because §707(b)(4) expressly refers to Rule 9011, the safe-harbor notice provisions of Rule 9011 apply to requests for sanctions under §707(b)(4). There is case law support for his argument. *See*, *e.g., In re Bonilla*, 573 B.R. 368, 377 n.8 (Bankr. D.P.R. 2017). But the failure to give the safe-harbor notice may be harmless error when the sanctions sought are also available under §105 and §526(c) because neither of those provisions require a safe-harbor notice. *Law Solutions of Chicago LLC v. Corbett*, 2019 WL 1125568, at *9 (N.D. Ala. Mar. 12, 2019), *aff'd*, 2020 WL 4915335, at *1 (11th Cir. Aug. 21, 2020).[5] Further, even if the safe-harbor provisions generally apply to §707(b)(4) requests for sanctions, the provisions do not apply with respect to the filing of the petition and schedules because such filings have "immediate collateral effects" and such documents generally cannot be withdrawn without court approval. *In re Parikh*, 508 B.R 572, 588 (Bankr. E.D.N.Y. 2014) (citing *Levey v. Kesser Cleaners Corp.*, 2007 WL 2177048, at *3 (E.D.N.Y. July 27, 2007)).

Because this Court intends to impose only limited sanctions on Attorney Homa at this time, a full discussion of exactly under what circumstances sanctions may be awarded under §707(b)(4) without first giving the safe-harbor notice is not necessary here. Suffice it to say, however, that the failure to give such notice by the UST or any other party is not a full or complete defense to the awarding of sanctions. The Court may issue a *sua sponte* rule to show cause and may rely on §105 and §526(c) to impose the same types of sanctions available

---

[5] Law Solutions of Chicago LLC is a related entity to UpRight Law and, in fact, is referred to as UpRight throughout the decision. It is noted that Attorney Menditto represented UpRight Law in the recent appeal.

under §704(b)(4) and Rule 9011. And regardless of whether sanctions may issue pursuant to §707(b)(4) or Rule 9011, the fact that Attorney Homa violated his professional duties under both §707(b)(4) and Rule 9011 will be discussed below.

Another procedural hurdle raised by Attorney Homa and Attorney Menditto is their claim that discipline may only be imposed in the Central District of Illinois through the issuance of a rule to show cause by a judge. The local rules provide that, when a judge is contemplating suspension, disbarment, or disciplinary action, the attorney whose conduct is being questioned must be given an opportunity to show cause why the court should not suspend, disbar, or discipline the attorney. CDIL-LR 83.6. This Court agrees that, whenever it intends to act *sua sponte*, the proper procedure is to issue a rule to show cause giving notice and an opportunity to respond and be heard to all persons who might be impacted by the Court's actions. But the local rules are not intended nor have they ever been construed to prevent parties from seeking sanctions by motion under applicable statutes and rules. Specifically, the local rules do not and cannot override the rights of the UST and other parties to seek relief under §526, §707(b)(4), Rule 9011, or any other provision of the Bankruptcy Code and Rules. Local rules cannot be used to abridge or modify substantive rights. 28 U.S.C. §§2071, 2072(b). Local rules cannot be applied in a way that conflicts with the Bankruptcy Code and Rules. *In re Pham*, 536 B.R. 424, 432 (B.A.P. 9th Cir. 2015) (citations omitted). This Court's ability to address Attorney Homa's conduct is not limited by the local rules in the manner suggested by Attorney Homa. This Court has full authority to hear the issues raised by the UST.

## B. Attorney Homa's Conduct

In both the Finn and Custer cases, Attorney Homa's conduct fell well below required standards. In both cases, he failed to meet with his clients or have any meaningful interaction with them before filing. He also failed to review necessary documents to acquaint himself with their financial conditions. In the Finn case, he failed to calendar the creditors meeting and failed to include information about multiple sales and transfers made by Ms. Finn on her schedules and SOFA. In the Custer case, he failed to fully inquire of the Custers about their expectations for the bankruptcy and did not review bank statements that would have disclosed payments to another law firm and other relevant information about their desperate efforts to save their home. To be blunt, Attorney Homa did not have a clue what was going on with Ms. Finn or the Custers when he filed their bankruptcy cases. His lack of knowledge and effort in both cases is indefensible, and his conduct caused real harm to his clients.

Attorney Homa's conduct in both cases violated Rule 1.1 of the Illinois Rules of Professional Conduct because his representation of Ms. Finn and the Custers was not competent and was not even remotely thorough; Attorney Homa never made any effort to become reasonably prepared for the representation of his clients. Ill. R. Prof'l Conduct (2010) R. 1.1 (eff. Jan. 1, 2010). His failure to meet with his clients in any way—personally or electronically—to fully discuss their financial problems and to gather and review all required financial information is a blatant violation of his professional responsibilities.

Both the schedules and SOFA in each of the Finn and Custer cases contained significant inaccuracies. Some of the inaccuracies were statements that

were untrue, others were, at the very least, misleading. In agreeing to represent his clients and preparing and presenting the documents for their signatures, Attorney Homa counseled both Ms. Finn and the Custers in violation of §526(a)(2). Because with the exercise of reasonable care—the type of care required by the standards for professional conduct—Attorney Homa could have and should have known of the inaccuracies, untruths, and misleading information contained on the documents, his conduct constitutes a serious violation of §526(a)(2). He had a duty to tell his clients what information was needed so that accurate and complete documents could be filed. *Moffett*, 2012 WL 693362, at *3. To the extent the information was not collected or not reviewed by him before the cases were filed, the fault lies with Attorney Homa. *Id.* Attorney Homa is subject to the provisions of the Code regulating debt relief agencies. He violated those provisions in his representation of Ms. Finn and the Custers.

Attorney Homa's conduct also violated his duties under §707(b)(4) and Rule 9011. Attorney Homa's signature on the petition in each case certified that he had performed a reasonable investigation into the facts of each case and had no knowledge, after inquiry, that any information on either the Finn or Custer schedules was inaccurate. 11 U.S.C. §707(b)(4)(C), (D). But, of course, Attorney Homa had not done a reasonable investigation or inquiry, and information contained on the documents filed in both cases was incorrect and not well grounded in fact. Likewise, his signature and his filing of the petitions and other documents in each case represented a certification that, after reasonable inquiry, the allegations and factual contentions contained in the documents had evidentiary support. Fed. R. Bankr. P. 9011(b). But again, the documents were

-21-

replete with factual inaccuracies, and Attorney Homa had made no reasonable inquiry into the facts of either case.

Attorney Homa's misconduct in both the Finn and Custer cases is indefensible. Nevertheless, Attorney Homa and Attorney Menditto attempted to defend it and, in doing so, aggravated rather than mitigated the Court's concerns. Unfortunately, their responses to the Motions for Sanctions lacked candor and attempted to deflect blame onto Ms. Finn and the Custers.

At the hearing in the Custer case on January 28, 2020, Attorney Homa stated unequivocally that he did not meet with the Custers and that he did not have to meet with them. The UST claims, and Attorney Homa did not deny, that he said the same thing to the UST's attorney when confronted in the Finn case. At a hearing on February 25, 2020, Attorney Homa admitted that his statements that the Court had condoned his failure to meet with his clients were not accurate, and he apologized to the Court and promised to change his practice of not meeting with clients. Nevertheless, in the responses to the Motions for Sanctions, Attorney Homa and Attorney Menditto deny that Attorney Homa failed to meet with his clients. Rather, they say his policy was to offer in-person meetings, but, when clients lived at a distance or had health problems, as Ms. Finn and the Custers all apparently do, the option of not meeting in person is also offered. Although not stated expressly, the implication is that it was Ms. Finn and Mr. and Mrs. Custer who requested the accommodation of not having to meet personally with Mr. Homa. The implication is not credible.

Both Attorney Homa and Attorney Menditto have a duty to be candid with the Court. Ill. R. Prof'l Conduct (2010) R. 3.3(a)(1) (eff. Jan. 1, 2010). Attorney

Homa first violated that duty when he insisted at the January 28, 2020, hearing that the Court had expressly condoned a practice of attorneys not meeting with clients. He later admitted that his statements were not true; he had not been candid with the Court. For Attorney Homa and Attorney Menditto to now say that it was not Attorney Homa's practice makes no sense and is just not credible. Why would Attorney Homa have gone down the extremely problematic path of trying to justify his failure to meet with his clients, if, in fact, he had not actually failed to meet with his clients? The Court believes that Attorney Homa was telling the truth on January 28, 2020, when he said that he did not meet with clients because he did not think he had to do so. The Court does not believe that Attorney Homa's failure to meet with Ms. Finn and the Custers was based on requests made by the clients. The disavowal now of what was earlier admitted is troubling and evidences an ongoing lack of candor with the Court.

Also problematic is the insistence by Attorney Menditto and Attorney Homa that the errors made by Attorney Homa were harmless and that no one was injured by Attorney Homa's misconduct. The errors were far from harmless, and Attorney Homa's clients, particularly the Custers, were injured by his failure to properly and competently represent them.

Attorney Menditto says in the Responses that everybody makes mistakes and that the errors were harmless because they were fixable. Although it may be true that everyone makes mistakes, Attorney Homa's mistakes were not typographical or small, inadvertent errors. Attorney Homa affirmatively chose not to meet with his clients, not to collect all required information before filing their cases, and not to review the financial information and documents he did collect.

The numerous inaccuracies in his clients' schedules and SOFAs were the result of his total disregard for his professional duties. His misconduct in filing the Custers' case is particularly egregious because, by the time he filed it on December 5, 2019, Ms. Finn's case was already in trouble due to his unprofessional practices. The Trustee had conducted two creditors meetings and, in the process, discovered numerous errors in Ms. Finn's paperwork. Both the UST and the Trustee had obtained orders compelling Ms. Finn to appear for Rule 2004 examinations, with the UST citing Attorney Homa's failure to meet with Ms. Finn as a reason for compelling the examination. The deadline for objecting to Ms. Finn's discharge had been extended into 2020. Attorney Homa was on notice before he filed the Custers' case that his practices were inadequate and that he should put in extra time and effort to make sure that the Custers' petition, schedules, and SOFA were complete and accurate. Attorney Homa ignored the notice and filed the Custers' case anyway.

Attorney Menditto says the errors were fixable because, in each case, amended documents were filed. He misses the point that filing inaccurate documents may result in damages or harm to a client even if the documents are later amended. It is true that petitions, lists, schedules, and statements may be amended at any time before a case closes. Fed. R. Bankr. P. 1009(a). But a debtor's discharge may be denied for making material false oaths on initial schedules and SOFAs. 11 U.S.C. §727(a)(4). And although proof of fraudulent intent is generally required to deny a discharge for making false oaths, the required proof can be established when there are multiple errors in the documents evidencing a reckless disregard for the truth. *Stamat v. Neary*, 635 F.3d 974, 982

-24-

(7th Cir. 2011). Filing amendments after the errors have been discovered does not "cure the initial failures." *Id.* "The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985).

The documents filed in both the Finn and Custer cases contained multiple errors, putting both the Trustee and UST on alert that objections to discharge might be warranted. In each case, extensions of time to object to discharge were sought and obtained. The amendments in each case were filed only after the Trustee had discovered the errors and omissions in the originally filed documents. Fortunately for both Ms. Finn and the Custers, the Trustee and UST decided, after their investigations, that it was Attorney Homa who was at fault rather than his clients. Ultimately, Ms. Finn and Mr. and Mrs. Custer all received their discharges. But that is not necessarily always going to be the case. Even when an attorney has been negligent, the client may still be penalized with the loss of a discharge. *See Swartz v. Moffett (In re Moffett)*, 2012 WL 359765, at *6-7 (Bankr. C.D. Ill. Feb. 2, 2012). Here, Attorney Homa's misconduct put the discharges of his clients at risk, and that is not harmless error.

Both Ms. Finn and the Custers also suffered monetary damages as a result of Attorney Homa's misconduct. Both paid fees at the high end of the spectrum for quality services that they did not receive. When the Motions for Sanctions were filed, UpRight Law voluntarily refunded the fees and costs to the Trustee but did nothing to compensate their clients. Both Ms. Finn and the Custers had to attend two creditors meetings and had their discharges held for many months while the

Trustee and UST investigated. The Custers have agreed to pay more than $2700 to the Trustee related to undisclosed transfers and non-exempt funds in a bank account. If Attorney Homa had looked at the Custers' bank statements and made an attempt to understand when their income came in and payments went out, he most certainly could have timed the Custers' filing to minimize the amount of non-exempt funds in the account on the date of filing. And, of course, if he had done his job as required, there would have been no turnover of the fees and costs and no resulting incentive for the Trustee to pursue other small assets because he was already administering an estate. Attorney Homa and Attorney Menditto claim that the additional scrutiny that was placed on these cases did not harm the clients, but it cost the Custers $2700 that they do not appear to be able to easily afford to pay. And, again, both Ms. Finn and the Custers paid top-of-the-spectrum fees for poor-quality services. They were harmed, and it is unfortunate that Attorney Homa and Attorney Menditto do not see it or, worse, see it but refuse to admit it.

Attorney Homa violated his professional duties under the Illinois Rules of Professional Conduct and the Bankruptcy Code and Rules in his representation of Ms. Finn and the Custers. His violations were egregious and indefensible. His violations caused real harm to his clients.

### C. Imposition of Sanctions

The UST first asks that this Court examine the fees paid by Ms. Finn and the Custers to Attorney Homa and to order disgorgement to the extent that the fees paid exceed the reasonable value of the services rendered. 11 U.S.C. §329(b).

UpRight Law disgorged the fees and costs paid by Ms. Finn and the Custers to the Trustee after the Motions for Sanctions were filed and, accordingly, Attorney Homa says the issue is moot and that this Court should not address it. Attorney Menditto reports that in another case in another court, fees were disgorged and the UST admitted that the voluntary disgorgement mooted the issue. But what happened elsewhere does not bind this Court. A discussion of the issues is called for despite UpRight Law's voluntary payments to the Trustee.

Generally, when considering the reasonable value of fees, the Court would consider a number of factors, including the time spent, hourly rate charged, necessity of services, customary compensation charged in the community, and the benefit received by the rendering of the services. 11 U.S.C. §330(a)(3). Attorney Homa submitted no information on any of these issues, presumably because the fees were voluntarily disgorged. Thus, the Court is compelled to find that disgorgement of the entire sum of the fees and costs paid is required. A question remains, however, about whether the disgorgement should have been to the Trustee or to the individual Debtors.

If the funds used to pay the compensation in the first place "would have been property of the estate" then the disgorgement is to the Trustee for the benefit of the estate. 11 U.S.C. §329(b)(1)(A). Insufficient information is before the Court to make a determination of this issue. The parties might have presumed that if the funds were still in accounts held by Ms. Finn or the Custers when they filed, then the funds would have been property of the estate and disgorgement to the Trustee would be required. But Ms. Finn, for example, lists Social Security as her only source of income and disclosed no other source from which she might have paid

Attorney Homa. If she paid for her bankruptcy with funds from an account into which the only deposits were Social Security funds, then she paid with exempt funds. 42 U.S.C. §407. And following the circular reasoning of §329(b)(1)(A), if the funds had not been paid for fees but were still in the account, they would be exempted from the bankruptcy estate.

The Court has no idea if Ms. Finn used traceable Social Security proceeds to pay Attorney Homa or whether there is any theory under which the Custers might make a similar claim. What concerns the Court is that it does not appear that Attorney Homa considered the issues or looked after the potential interests of Ms. Finn or the Custers when the voluntary disgorgement was made. The voluntary disgorgement was made in an effort to moot the issues and to remove the matter from the Court's consideration. UpRight Law and Attorney Homa were the intended beneficiaries of that endeavor, and Attorney Homa's failure to consider the interests of Ms. Finn and the Custers is troubling.

At this time, the Court will not reverse the disgorgement of the funds to the Trustee in these cases. All parties are admonished, however, that in future cases the issue of to whom the disgorgement should be made is one that the Court may consider. Although voluntary disgorgement may well be appropriate in many cases, if the disgorgement is made to a trustee and not to a debtor, this Court may ask for additional information and take up the issue *sua sponte*.

In addition to disgorgement, the UST asks that Attorney Homa be ordered to file an affidavit with all new case filings certifying that he met with his client, that educational requirements be imposed on Attorney Homa, and that a civil penalty be levied. The Court declines to issue the additional sanctions. To be clear,

the Court's decision not to impose additional sanctions is not based on any belief or finding that it does not have the authority to issue such sanctions. Rather, despite the egregious nature of Attorney Homa's conduct, the Court is willing to give him the opportunity to step up and remedy his practices without the issuance of any further sanctions at this time. Attorney Homa must, however, take this opportunity to dramatically improve his practices; he will not be able to say in the future that he did not understand what his obligations to his clients are or what the Court expects of him.

Attorney Homa must understand that, even though the Court is not imposing an additional affidavit requirement on him now, whenever he files a new case, his signature on the documents represents a certification that he has done a thorough investigation, made full inquiry into the facts and law, and fully advised his clients as to the risks of filing. 11 U.S.C. §§526, 707(b)(4); Fed. R. Bankr. P. 9011. Thus, he must fully and scrupulously comply with all requirements of the Bankruptcy Code and Rules and the Illinois Rules of Professional Conduct going forward.

Attorney Homa must also understand that, even though the Court is not defining the precise conditions of how attorneys may or should meet with their clients in these days of a nationwide pandemic, the Court is explicitly not condoning the slipshod manner in which he conducted himself in the past.[6] Mr.

---

[6] The UST asks the Court to provide express guidelines for attorney meetings with clients. The request was made pre-pandemic but would have been declined in any event. The Court believes that the requirements of being thorough and competent control, but the details must be left to the attorneys and the clients; there is no one-size-fits-all method. But obviously in-person meetings are the norm and with the onset of the pandemic, video conference meetings are an appropriate substitute. It is important to look people in the eye and observe their facial expressions when trying to get to know them

Homa needs to acknowledge that he did not get into trouble in the Finn and Custer cases solely because he failed to meet face-to-face with his clients. He got into trouble because he failed to meet with them at all. He did not get into trouble because he collected information and documents solely through email exchanges. He got into trouble because he wholly failed to collect all of the basic information that is required for bankruptcy filings and failed to review much of what he did collect.

Finally, Attorney Homa must understand that his days of repeated miscalendaring are over. He needs to immediately develop a system in his office to calendar every creditors meeting, every hearing, and every deadline; he must check and recheck the calendar information regularly to make sure that he is meeting all obligations in a timely manner.[7]

Some courts have held that the publication of an opinion that criticizes and sanctions a lawyer is a sanction in and of itself. *See, e.g., Seare*, 493 B.R. at 226. But the entering of findings of fact and conclusions of law are mandated for the

---

and determine their credibility. *Sonrai Systems, LLC v. Romano*, 2020 WL 3960441, at *3-4 (N.D. Ill. July 13, 2020). This Court will not say that no attorney can do a proper job of representing a bankruptcy debtor through only phone and email contacts. What the Court can say is that it would be extremely difficult to do a thorough job using only phone and email, and Attorney Homa has demonstrated that he is not capable of fulfilling his professional obligations using only phone and email.

[7] Attorney Homa says that he is a partner in UpRight Law, and UpRight Law says that it is a law firm with a formal partnership arrangement rather than just a referral agency. *Deighan Law, LLC v. Daugherty*, 615 B.R. 564, 566 (E.D. Mo. 2020). (Again, UpRight Law does business as Deighan Law LLC.) Recently, in convincing a district court that it is, in fact, a legitimate law partnership, it represented that it provides its partners with case management software and malpractice insurance. *Id.* at 567. It also claims that it monitors electronic filings so that matters do not "slip through" the local attorney partners. *Id.* at 569. If that is the case, then most certainly Attorney Homa has access to the necessary tools to address his law office management deficiencies and his calendaring needs.

resolution of such issues. Fed. R. Civ. P. 52(a)(1); Fed. R. Bankr. P. 7052, 9014(c).
Thus, this Court has not previously considered the issuance of an opinion to be
a sanction. Nevertheless, to the extent that publication deters future, similar
conduct by Attorney Homa or others, this Opinion serves as a public reprimand.
*Seare*, 493 B.R. at 226.

## IV. Conclusion

Attorney Homa's conduct in the Finn and Custer cases fell well below
required standards and violated his duties under the Bankruptcy Code and Rules
and the Illinois Rules of Professional Conduct. The Motions for Sanctions will be
granted, in part. Attorney Homa will be sanctioned by requiring the disgorgement
of all fees and by a public reprimand. Other sanctions requested by the UST will
be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law
pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###